

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-2008

# USA v. Skeffery

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Skeffery" (2008). *2008 Decisions.* Paper 999.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/999

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-5024

UNITED STATES OF AMERICA

v.

ROBERT F. SKEFFERY,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 05-cr-00002-IJ)
District Judge: Honorable Kim R. Gibson

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2008

Before: AMBRO, CHAGARES and COWEN, Circuit Judges

(Opinion filed June 20, 2008  )

OPINION

AMBRO, Circuit Judge

　　Robert Skeffery appeals from his conviction for possession with intent to distribute

fewer than fifty kilograms of marijuana.  We affirm.

In April 2004, Pennsylvania State Trooper Westley Berkebile stopped Skeffery's car on the Pennsylvania Turnpike for what Berkebile considered to be dangerous driving. Berkebile asked Skeffery for his driver's license, his registration, and the vehicle's rental agreement. In addition to his registration, Skeffery produced a fake driver's license in the name of "Clyde Ferron" and an out-of-date rental agreement. Berkebile told Skeffery that the rental agreement was overdue and, while doing so, detected an "overwhelming odor" of marijuana emanating from the car.

Berkebile then returned to his patrol car and ran "Clyde Ferron" through a criminal-history database, which revealed that the name was associated with numerous prior drug violations, several aliases, and a suspended driver's license. As a precaution, Berkebile called Sergeant Anthony DeLuca to the scene and briefed him on the situation.

Berkebile then asked Skeffery to step out of the car and presented him with a warning notice for speeding. He returned Skeffery's documents, told Skeffery he was "free to leave," and began to walk back to his patrol car.

Skeffery's testimony differs markedly from Berkebile's and DeLuca's as to what happened next. At the suppression hearing, Berkebile and DeLuca testified that Skeffery reapproached Berkebile and sought to explain the problems with the rental agreement he had shown Berkebile previously. Berkebile further testified:

> At that point I told him that wouldn't be necessary. I asked him if I could ask a few questions. I explained to him that there is a large problem on the turnpike with contraband in vehicle[s], and I explained by contraband what I was referring to was weapons, large amounts of cash, illegal drugs, stolen

2

items, wanted persons, that sort of thing. I asked him if he had any of these—any type of contraband in his vehicle, specifically weapons, and I asked [about] illegal drugs, right down the line. . . . His response was: "Not that I know of."

App. 95. Berkebile testified that, finding this response unusual, "I explained to him that I wouldn't be doing my job if I didn't ask him if he minded if I searched his vehicle." App. 96. According to Berkebile, Skeffery responded, "[Y]ou can search my car." App. 97. Berkebile did so, and discovered marijuana in the trunk. He then arrested Skeffery.

Skeffery denies that he ever granted Berkebile consent to search his car. Skeffery testified that Berkebile performed the search without asking for permission, and that he (Skeffery) would not have consented if asked, given that he knew he had marijuana in the car. App. 242.

Skeffery filed a motion to suppress the marijuana, which the District Court denied. The Court found that, "[i]n consideration of the totality of the circumstances . . .[,] the Court finds Trooper Berkebile credible and concludes that Defendant voluntarily provided consent to Tooper Berkebile to search" the car. Skeffery then pled guilty, but reserved the right to appeal the District Court's order not to suppress. He filed this appeal after the Court imposed a sentence of time served, three years' supervised release, and a special assessment.

On appeal, Skeffery presents only one argument: that the District Court clearly erred in finding that he consented to the warrantless search of his car. He does not contend that he was physically or mentally impaired, nor that he gave consent under

3

coercion or threats. Rather, he challenges the veracity of the police officers' testimony that he reinitiated contact with Berkebile and told Berkebile he could search Skeffery's car. The District Court believed this testimony, and we must too, as "we will not review a district court's credibility determination." *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995).

Skeffery was recently removed to Jamaica, and the parties dispute whether this act renders Skeffery's appeal moot. We need not decide this issue, which would require an examination of the immigration-law consequences of our vacating the District Court's judgment.[1] Although a federal court generally must determine its Article III jurisdiction prior to reaching the merits of a case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), an exception exists where, as here, controlling precedent has "foreordained" the outcome on the merits so as to deny relief, *see Seale v. INS*, 323 F.3d 150, 157 (1st Cir. 2003); *Ctr. for Reprod. Law & Pol'y v. Bush*, 304 F.3d 183, 194–95 (2d Cir. 2002); 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3531.15 (3d ed. 2007) ("Supreme Court decisions that may seem to reach the

---

[1] Where a convicted alien has been removed, the alien's "having a chance at reentering the United States in the discretion of the immigration authorities [as a result of the Court's decision] is sufficient to give [a] petitioner a personal stake in the litigation that presents a live case or controversy." *United States v. Hamdi*, 432 F.3d 115, 121 (2d Cir. 2005). It is far from clear to us what the immigration consequences of vacating the District Court's judgment would be, particularly because Skeffery has previous convictions and neither party has supplied us with evidence of the basis for his recent removal.

merits without deciding jurisdictional challenges are distinguishable [from *Steel Co.*'s general rule]. In some, the issue on the merits had been resolved in parallel litigation, so that the Court was not making law by a disposition on the merits."). As Skeffery asks us to do that which our precedents clearly foreclose—disturb the District Court's credibility finding—we reject his argument without considering the issue of mootness.

For the foregoing reasons, we affirm.