**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3958
_____

MARIO MENDOZA,
Appellant,

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:11-cv-03540)
District Judge: Hon. Joel A. Pisano
_____

Submitted under Third Circuit LAR 34.1(a)
June 22, 2012

Before: AMBRO, VANASKIE and ALDISERT, <u>Circuit
Judges</u>

(Filed:  June 28, 2012)

Thomas R. Ashley, Esq.
Law Offices of Thomas R. Ashley, Esq.
50 Park Place, Suite 1400

Newark, New Jersey 07102

*Attorney for Appellant*

Paul J. Fishman, United States Attorney
Mark E. Coyne, Chief of Appeals Division
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102-2535

Norman Gross, Assistant United States Attorney
Office of the United States Attorney
Camden Federal Building and U.S. Courthouse
401 Market Street, Fourth Floor
Camden, New Jersey 08101-2098

*Attorneys for Appellee*

———————

OPINION OF THE COURT
———————

ALDISERT, <u>Circuit Judge</u>.

In 2006 Mario Mendoza pleaded guilty to an aggravated felony and, as a result, now faces imminent removal from the United States. He appeals from the United States District Court for the District of New Jersey's order denying his petition for a writ of error coram nobis, in which he sought to vacate his plea due to his counsel's failure to apprise him that his conviction would lead to deportation. For

the reasons that follow, we will affirm the judgment of the District Court.

I.

Mendoza was born in Ecuador and lives in New Jersey. From 1996 to 2001, while working as a licensed realtor, he helped borrowers obtain federally insured mortgages. His behavior led the government to charge him with conspiring to fraudulently induce the Federal Housing Authority to insure mortgage loans, in violation of 18 U.S.C. §§ 371 and 1001. Mendoza's counsel, Glen Cavanagh, explained to him he could avoid prison by pleading guilty. Cavanagh did not, however, apprise Mendoza that, as an aggravated felony, his crime would lead to mandatory deportation. See 8 U.S.C. § 1227(a)(2)(A)(iii).

Mendoza entered his plea on March 29, 2006. Prior to sentencing on September 11, 2006, Mendoza learned from his Presentence Investigation Report ("PSR") that his conviction might result in removal. The District Court sentenced Mendoza to two years' probation and ordered him to pay $100,000 in restitution. As a condition of his probation, Mendoza was required to cooperate with immigration officials.

Sometime after Mendoza received his sentence, the government instituted removal proceedings and ordered him to leave the country. On January 14, 2010, after completing his sentence, Mendoza filed a motion pursuant to 28 U.S.C. § 2255 and Rule 32(d) of the Federal Rules of Criminal Procedure to vacate his sentence and withdraw his plea. In it, Mendoza contended that Cavanagh did not warn him of the immigration implications of pleading guilty to an aggravated

3

felony and noted that it was an open question whether a lawyer renders constitutionally deficient performance by failing to highlight a plea's immigration consequences. On March 31, 2010, the Supreme Court answered that question in the affirmative. See Padilla v. Kentucky, 130 S. Ct. 1473 (2010). Five months later, on September 9, 2010, Mendoza withdrew his motion to vacate his plea.

Nine months after that, on June 8, 2011, Mendoza repackaged these same arguments in a petition for a writ of error coram nobis. Mendoza contended that, had he been aware that a guilty plea would subject him to deportation, he would not have pleaded guilty and would have instead attempted to negotiate a better deal or risked trial. On September 21, 2011, after noting the issue of Mendoza's counsel's ineffectiveness, the District Court denied Mendoza's petition on the alternative grounds that he filed after an unreasonable delay and did not assert his innocence. Mendoza timely appealed.

## II.

The District Court had jurisdiction over the petition under 28 U.S.C. § 1651(a), in aid of its jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's legal conclusions de novo and its factual findings for clear error. See United States v. Orocio, 645 F.3d 630, 635 (3d Cir. 2011).

## III.

Notwithstanding Mendoza's counsel's deficient performance, we agree with the District Court that Mendoza's

unreasonable delay in filing his coram nobis petition forestalls his efforts to seek relief. The rare remedy of a writ of error coram nobis may be "used to attack allegedly invalid convictions which have continuing consequence, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255." United States v. Stoneman, 870 F.2d 102, 105-106 (3d Cir. 1989). Such relief is appropriate, however, only "[(a)] to correct errors for which there was no remedy available at the time of trial and [(b)] where 'sound reasons' exist for failing to seek relief earlier." Id. at 106 (quoting United States v. Morgan, 346 U.S. 502, 512 (1954)). This "sound reason" standard is even stricter than that used to evaluate § 2255 petitions. Id. Indeed, "'it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate.'" Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

Although Mendoza's counsel's deficient performance may have precluded him from seeking relief at the time of his plea, Mendoza cannot show any "sound reasons" for his lengthy delay in seeking relief since that time. Mendoza became aware of his plea's deportation consequences in September 2006 via his PSR, yet did not allege until 2010 that his counsel was ineffective. He attributes this four-year delay to a combination of: (a) his (mistaken) belief that his cooperation with immigration officials would stave off his deportation, and (b) the absence of Supreme Court precedent regarding a counsel's duty to warn of a plea's immigration consequences—only after the Supreme Court decided Padilla, Mendoza contends, could he have known that his counsel was ineffective.

5

These are not "sound reasons." First, Mendoza's cooperation was a condition of his probation, not of his remaining in the country, and any indications to the contrary were not of the government's making. Second, we have held that Padilla did not create a "new rule" for retroactivity purposes precisely because lawyers in the Third Circuit have long been expected to advise clients of a plea's deportation implications. See Orocio, 645 F.3d at 640 ("Lower court decisions not in harmony with Padilla were, with few exceptions, decided before 1995 and pre-date the professional norms that . . . had long demanded that competent counsel provide advice on the removal consequences of a client's plea.").[1] Indeed, Orocio involved a petition for a writ of error

---

[1] On April 30, 2012, the United States Supreme Court granted certiorari on the issue of whether Padilla created a "new rule," see Teague v. Lane, 489 U.S. 288, 301 (1989), and thus, would not apply retroactively on collateral review. See Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011), cert. granted, 132 S. Ct. 2101 (2012) (No. 11-820). Although this question has split the circuits, compare Orocio, 645 F.3d 630 (holding that Padilla is retroactive), with Chaidez, 655 F.3d 684 (holding that Padilla does not apply retroactively) and United States v. Chang Hong, 671 F.3d 1147 (10th Cir. 2011) (same), its resolution has no bearing on Mendoza's claim, which falls short regardless. If the Supreme Court were to overrule Orocio and conclude that Padilla did, in fact, create a "new rule," such a ruling may strengthen Mendoza's argument that he was previously unaware of the rule, but would also preclude him from invoking Padilla retroactively, effectively foreclosing his claim. See, e.g., Orocio, 645 F.3d at 637-641.

coram nobis based on facts almost identical to those here, except Orocio filed his petition alleging deficient performance *before* the Supreme Court decided Padilla, based on existing precedent, and did so immediately upon learning of his impending deportation. Mendoza was not as diligent. Mendoza has known of the threat of removal since at least 2006, and his § 2255 motion to vacate his conviction because of ineffective assistance—filed six months before Padilla was decided and a full year-and-a-half before his present petition—demonstrated that he did not need the Supreme Court's clarification to have raised his present contentions. That the law is unsettled does not justify a delay in filing a coram nobis petition, cf. Bousley v. United States, 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause . . . if it means simply that a claim was unacceptable to that particular court at that particular time." (quotation omitted)), nor does the record reveal any other "sound reason" for waiting so long to seek relief.

Finally, even if Mendoza had properly and timely raised his ineffective assistance claims, we note that his underlying efforts to withdraw his plea would almost certainly fail. To withdraw a plea of guilty, a defendant must: (1) demonstrate strong reasons for the withdrawal (2) assert his innocence, and (3) show that the withdrawal will not unduly prejudice the government. See United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001); United States v. Huff, 873 F.2d 709, 711 (3d Cir. 1989)). Cavanagh's egregious error and Mendoza's looming removal surely constitute a strong reason to withdraw the plea. See United States v. Trott, 779 F.2d 912 (3d Cir. 1985) (discussing how allegations of a plea's involuntariness relate only to the

7

strength of the defendant's reasons for withdrawal). But Mendoza has not asserted his innocence; rather, he has claimed merely that he would have sought a more favorable plea deal or risked trial. It does not appear that such a speculatively favorable plea deal existed, nor that a trial would have resulted in anything less than a conviction for an aggravated felony. More importantly, the government would certainly be unduly prejudiced by the re-prosecution of a case involving facts nearly a decade dormant.

IV.

Mendoza's delay in pursuing relief was unreasonable and bars his petition for a writ of error coram nobis. For that reason and the others discussed in this opinion, the judgment of the District Court will be AFFIRMED.